Donahue v. Hanighen.

---

EDWARD P. DONAHUE, APPELLANT, V. JOHN J. HANIGHEN, APPELLEE.

FILED MAY 15, 1914. No. 17,537.

1. **Partnership.** The plaintiff in this case sought to establish the existence of a partnership between himself and the defendant. The defendant denied that that relation existed, and alleged that plaintiff was employed by him on a salary of $100 a month, and that it was agreed that if the business in which he was engaged should prove profitable he would give the plaintiff a share of the profits to be fixed by the defendant. *Held,* That the plaintiff failed to establish the existence of a partnership by a preponderance of the evidence.

2. **Contract of Employment.** The district court found that under their agreement plaintiff was entitled to receive 25 per cent. of the net profits of the business originating in the city of Omaha, and rendered a judgment for the plaintiff for $664.12 accordingly. *Held,* That the judgment was sustained by the evidence and should be affirmed.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Smyth, Smith & Schall,* for appellant.

*W. H. DeFrance, contra.*

BARNES, J.

The plaintiff brought this action in the district court for Douglas county on the theory that he was a partner of the defendant, Hanighen, in the construction of certain sewers in the city of Omaha and elsewhere. He prayed for an accounting of the profits in the alleged partnership business, and for a judgment for the amount found to be due him on such accounting. The defendant by his answer denied the existence of any partnership agreement between himself and the plaintiff, and alleged that in the spring of 1909 he employed the plaintiff to work for him in his business of constructing sewers, and agreed to pay plaintiff the sum of $100 a month, and if his business was profitable he agreed he would, in addition to his salary of $100 a month, pay the plaintiff a part of his profits, which was to be afterwards determined by the defendant himself.

It appears that the plaintiff was an engineer who had been employed by the city of Omaha in such work as was performed by the city, and had theretofore had some experience in the construction of sewers; that for about six or eight months before he was employed by the defendant he had been out of a job, and was therefore somewhat anxious to obtain employment. The plaintiff testified that the defendant sent for him to discuss the matter of entering into a partnership, while the defendant testified that one Hammond came to the defendant, and told him that Donahue was out of a job and would be glad to get something to do, and defendant told Hammond to send Donahue around to see him. It appears from the testimony that afterwards Donahue met the defendant as he was driving in a buggy, and defendant invited him to ride. On the way they made an arrangement by which Donahue was

to go to work for the defendant, and was to have $100 a month, with a prospect of a share of the profits in case the business was profitable. No arrangement was ever made between them, so far as the record discloses, and no articles of copartnership between plaintiff and defendant were ever entered into in writing or filed in the office of the county clerk of Douglas county. The plaintiff was thereafter paid a weekly salary of $25, and after he worked for the defendant some six or eight months asked the defendant to advance him more money. This the defendant did from time to time, until Donahue had overdrawn his salary to the amount of $1,741.96. Meanwhile the defendant had constructed sewers in sewer districts Nos. 360, 361, 362, 363, 373, 377, 395 and 404; the last mentioned sewer being known as the "Izard street sewer," or "North Omaha main sewer." In addition the defendant had obtained a contract for and built a sewer for the United Real Estate & Trust Company, had obtained a contract and built a sewer for Milton Rogers & Son Company, had also built a sewer for the school district of Seward, known as the "Franklin school sewer." In addition thereto, the defendant had obtained contracts from the United States government and built a sewer near Fort Russell and one near Fort Robinson. After this work was nearly all completed the plaintiff demanded more money from the defendant, and was told that he had overdrawn his salary account to the amount of something over $1,700, and there was nothing more coming to him. Defendant also informed the plaintiff that he had concluded to give him 25 per cent. of the profits realized on the contracts which were obtained in the city of Omaha, and that the amount that plaintiff had overdrawn would just about balance the account for those profits. Defendant refused to pay the plaintiff any further amount until he received his pay on the balance of the contracts, which had not as yet been completed. Plaintiff was dissatisfied with this arrangement, and brought the present suit.

The plaintiff testified, among other things, that the defendant never said to him that the $1,741.96 was in addi-

tion to his salary, and claimed that he received that amount on account of his interest in the partnership, and not otherwise. Plaintiff also testified that in the summer of 1910 he had a talk with the defendant, and asked him for a statement showing the amount that the defendant owed him; that defendant sent a statement, made by his bookkeeper, Larson, through the mail. In that statement nothing was said in regard to the contracts at Fort Russell and Fort Robinson. The statement showed that the defendant had received net profits on all his Omaha contracts amounting to $10,058.66. Plaintiff also testified that, at the time defendant fixed the salary question, he said that they were to consider the partnership arrangement later on; that he did not ask for any money after the 22d day of May, 1910; that after that his only demand was for a statement, and not for money; that he did not ask the defendant what per cent. he was going to pay at that time, but did later. He also testified that he never had anything to do with the jobs at Fort Russell and Fort Robinson, and was never nearer to that work than the city of Omaha.

It appears that one contract for a sewer in the city of Omaha was taken in the name of the plaintiff, but it also appears that defendant furnished the certified check and the money to secure and carry out the contract. It also appears from the plaintiff's own testimony that he never furnished any of the means necessary to carry out the several contracts taken by the defendant; that he never furnished any of the material; and in fact the only thing the plaintiff did was to act as a foreman in supervising and looking after the work on the contracts which were entered into between the defendant and the city of Omaha. Plaintiff also testified that he spoke to the defendant about getting up articles of agreement between them, and that defendant replied that the articles would be ready in about a week. He also testified that there never was any special arrangement as to the interest he was to have in the partnership. The testimony of the defendant was corroborated by the evidence of his bookkeeper, Larson, and that of Walter M. Ord. Defendant also testified that he

told Ed (meaning the plaintiff) that he intended to give him 25 per cent. of the net profits on the Omaha jobs; that plaintiff said to him, "I think you are hogging it a good deal;" that he replied, "That is just a question of opinion between you and me. I furnished my money and my brains to put this thing through. I am giving you 25 per cent. I don't think I am hogging it." Plaintiff said, "'I am not satisfied.' I said, 'I can't help it; that is the best that I can do for you.' He never made any claim in any of his conversations that we were partners." Donahue was general foreman on every one of the contracts with the city. With respect to the money advanced to Mr. Donahue outside of his salary, the defendant testified that "he had been with me over a year, and he asked for some money. I said, 'Ed, how much do you want?' I don't know if it was $50, $100 or $150. I told the bookkeeper to give it to him. Later on he wanted $400 or $500 more, and I said, 'All right, you can have it.' Then he wanted some work done in his house. I said, 'Sure, we will be glad to do it.' I loaned him $150 more, until it got up to the amount of $1,700; then I thought he was getting close to the limit; that was the last. Yes, he asked me for an advance after that. I told him no, it was more money than was coming to him."

As we view the record, the plaintiff failed to establish the existence of a partnership agreement between himself and the defendant, Hanighen, and on this point we are of opinion that the finding and judgment of the district court was right. It appears that the court then took into consideration the amount of the profits on the Omaha contracts, and made a finding that there was due from the defendant to the plaintiff, in addition to his salary of $25 a week, the sum of $664.12 as his share of the profits on those contracts on the 25 per cent. basis as fixed by the defendant, and rendered judgment accordingly.

As we view the record, the judgment of the district court was right, and it is in all things

AFFIRMED.